```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/22/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
WESAM EL-HANAFI,                                                 :
                                                                 :
                                    Plaintiff(s),                :   1:13-cv-2072-GHW
                                                                 :
                    -against-                                    :   OPINION AND ORDER
                                                                 :
UNITED STATES OF AMERICA, ET AL.,                                :
                                                                 :
                                    Defendant(s).                :
                                                                 :
-----------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

      Defendants Conmed Healthcare Management, Inc. ("Conmed") and Correct Care Solutions ("CCS") are private companies that provided medical services to federal inmates at the Alexandria Detention Center in Alexandria, Virginia. Plaintiff Wesam El-Hanafi brings this action against Conmed and CCS, together with the individual employees of these companies, for failure to diagnose and treat his medical condition during his eleven-day incarceration at the Alexandria Detention Center. Conmed and CCS move to dismiss the complaint on the grounds that it fails to state a *Bivens* claim against them and their employees, and that the state law claims asserted by El-Hanafi are time-barred.[1] This case raises the question whether a private company under contract with the federal government to provide medical services, as well as its employees, can be held liable under *Bivens*. Because the Supreme Court rejected the expansion of *Bivens* under these circumstances in *Correctional Services Corporation v. Malesko*, 534 U.S. 61 (2001) and *Minneci v. Pollard*, 132 S. Ct. 617

---

[1] Dkt. 44. Defendants the United States of America, the Vice Consul of the U.S. Embassy in Dubai, agents of the Federal Bureau of Investigation, and federal employees at the Federal Transfer Center in Oklahoma City, Oklahoma, and the Metropolitan Correction Center in New York, New York have also moved for a partial dismissal of El-Hanafi's claims against them arising under the Federal Tort Claims Act, *Bivens*, and state law. Dkt. 28. This opinion and order addresses only the facts and arguments relevant to the motion to dismiss filed by defendants Conmed, CCS, and their employees.

(2012), respectively, the Court grants the defendants' motion to dismiss with respect to the federal claims against them. Additionally, the Court dismisses El-Hanafi's state law claims against Conmed, CCS, and their employees as time-barred.

## I.   BACKGROUND

### A.   Facts[2]

On April 27, 2010, El-Hanafi was detained by the Abu Dhabi Police at the direction of the government of the United States. Third Amended Complaint ("Compl.") ¶ 31. He was held in the custody of the Abu Dhabi police until April 30, 2010, when he was delivered to agents of the United States. *Id.* ¶¶ 47-48. That same day, El-Hanafi was transported to the United States by plane on a flight that lasted 16 hours. *Id.* ¶¶ 47, 50. Upon his arrival at Dulles International Airport, El-Hanafi claims that he noticed, "for the first time, a stinging sensation in his right calf." *Id.* ¶ 56. Approximately five hours after his arrival in the United States, El-Hanafi was arraigned in the United States District Court for the Northern District of Virginia. *Id.* ¶ 57. Prior to the arraignment, El-Hanafi says he complained to "government agents near his holding cell" about "the stinging sensation in his calf." *Id.* ¶ 58.

El-Hanafi was subsequently held at the Alexandria Detention Center in Alexandria, Virginia, which he alleges was "medically staffed by either [Conmed or CCS], private contractors with the federal [Bureau of Prisons], an agency within the executive branch of the government of the United States." *Id.* ¶¶ 60, 61. He remained there for eleven days until being transferred to another facility. *Id.* ¶¶ 60, 71.

During his incarceration at the Alexandria Detention Center, El-Hanafi was held in isolation for twenty-two hours a day and received two hours per day for recreation. *Id.* ¶¶ 62-63. He says he

---

[2] The Court's summary of the underlying facts of this case is drawn from the plaintiff's Third Amended Complaint ("Compl.") (Dkt. 20).

continued to experience a "stinging pain in his calf," and decided to "make the most out of his two-hour period of 'recreation'" by doing "strenuous exercises in hopes of alleviating the pain he felt in his right leg." *Id.* ¶ 65. Those exercises did not help abate the pain, however, and it soon spread to his right ankle. *Id.* ¶ 66. On the first or second day of his confinement at the Alexandria Detention Center, El-Hanafi says he complained to unnamed "agents of the government of the United States" about the pain. *Id.* ¶ 67. El-Hanafi also spoke to an unidentified "female clinician who made rounds at the Virginia facility," describing to her the pain and the restrictions on his movement during the 16-hour flight from Dubai. *Id.* ¶ 68. The employee told El-Hanafi that "the pain was probably the result of a slower circulation of his blood in his lower extremities." *Id.* El-Hanafi states that he was given one or two tablets of ibuprofen, but that nothing else was done to address his condition, and that "no agent of the government referred [him] for an examination and medical diagnosis." *Id.* ¶¶ 69-70. On May 11, 2010, El-Hanafi was transferred out of the Alexandria Detention Center to a federal facility in Oklahoma City, Oklahoma, and eventually to the Metropolitan Correctional Center in New York, New York. *Id.* ¶¶ 71, 82.

  **B.**  **Procedural History**

  On March 28, 2013, El-Hanafi commenced this action, culminating in the Third Amended Complaint filed on February 19, 2014. He alleges five causes of action: (1) denial of medical care and medical malpractice in violation of the Federal Tort Claims Act ("FTCA") against defendant the United States of America; (2) negligence in the delivery of medical care in violation of the FTCA against the United States of America and in violation of state law against employees of the Alexandria Detention Center, the Federal Transfer Center, and the Metropolitan Correction Center, as well as CCS, Conmed, and their employees; (3) negligent enforcement of extraordinary restrictions on movement during extended flight time in violation of the FTCA and state law against various federal employees, the Vice Consul of the U.S. Embassy in Dubai, and certain FBI agents;

(4) negligent infliction of emotional distress in violation of the FTCA against the United States, and in violation of state law against employees of the Alexandria Detention Center, the Federal Transfer Center, and the Metropolitan Correction Center, as well as CCS, Conmed, and their employees; and (5) a *Bivens* claim against employees of the Alexandria Detention Center, the Federal Transfer Center, and the Metropolitan Correction Center, as well as CCS, Conmed, and their employees. *Id.*

On April 14, 2014, Conmed, CCS and their employees moved to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 44 ("Def. Br."). Specifically, Conmed and CCS moved to dismiss the only causes of action that are asserted against them: the second cause of action, alleging negligence in the delivery of medical care in violation of state law, the fourth cause of action, alleging negligent infliction of emotional distress in violation of state law, and the fifth cause of action, asserting a *Bivens* claim. *Id.* On June 6, 2013, El-Hanafi submitted his opposition to Conmed and CCS's motion to dismiss. Dkt. 52 ("Pl. Br."). On June 20, 2013, Conmed and CCS submitted a reply brief. Dkt. 54 ("Def. Rep. Br.").

## II.     DEFENDANT'S MOTION TO DISMISS

### A.     Standard of Review

Pursuant to Rule 12(b)(6), a plaintiff's complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (quoting Fed. R. Civ. P. 8(a)(2)). While "detailed factual allegations" are not required, the complaint must advance more than mere legal conclusions or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the moving party, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d

4

Cir. 2007), "then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting and citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

    **B.    Analysis**

        **1.    *Bivens* Claim Against Conmed and CCS**

El-Hanafi brings a *Bivens* claim against Conmed and CCS for the negligent infliction of medical care in violation of his Eighth Amendment rights. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. The Supreme Court has repeatedly warned, however, that the *Bivens* remedy is an extraordinary one that should rarely if ever be extended to "new contexts." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001). Thus, in *Malesko*, the Supreme Court refused to extend *Bivens* to confer a right of action for damages against a private company acting under color of federal law, reasoning that this was not the kind of deterrence contemplated by *Bivens*. *Id.* at 70-71 ("For if a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury.").

Here, like the plaintiff in *Malesko*, El-Hanafi alleges that defendants Conmed and CCS are private companies that contracted with the federal government to provide services to federal

5

inmates.³ Compl. ¶¶ 15, 60. As in *Malesko*, El-Hanafi accuses a private company of the negligent provision of medical care. *Id.* ¶¶ 61-70. Thus, the Court sees no reason why the principle articulated in *Malesko* – that the threat of suit against an individual's employer is not the kind of deterrence contemplated by *Bivens*, and therefore *Bivens* claims are precluded against private companies – should not apply here, and indeed, El-Hanafi does not dispute this in his opposition brief. Accordingly, El-Hanafi's *Bivens* claim against Conmed and CCS is dismissed.⁴

### 2. *Bivens* Claim Against Employees of Conmed and CCS

El-Hanafi also brings a *Bivens* claim against the individuals employed by Conmed and CCS. El-Hanafi claims that these employees demonstrated a "deliberate indifference to [his] medical needs." Compl. ¶ 232. Although not expressly articulated in his complaint, El-Hanafi appears to be asserting a violation of the Eighth Amendment, which prohibits cruel and unusual punishment. *See Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a *Bivens* implied damages remedy against prison officials pursuant to the Cruel and Unusual Punishments Clause of the Eighth Amendment).

In *Minneci v. Pollard*, the Supreme Court refused to extend a cause of action under *Bivens* to a federal prisoner seeking damages against a privately-employed individual for negligent provision of medical care in violation of the Eighth Amendment. 132 S. Ct. 617, 623 (2012). The plaintiff in *Minneci* was a prisoner at a privately-run federal prison in California. *Id.* at 620. He brought suit against several of the company's employees, including a several members of the medical staff, who he accused of depriving him of adequate medical care in violation of the Eighth Amendment's

---

³ Defendants assert that Conmed and CCS actually contracted with the City of Alexandria to provide medical services to federal inmates housed at the Alexandria Detention Center, and that it was the City of Alexandria, in turn, that contracted with the federal government. *See* Def. Reply Br. 6

⁴ Because the Court dismisses the *Bivens* claim against Conmed based on the holding in *Malesko*, it is unnecessary to reach the issue, raised by defendant, of whether Conmed was in fact a provider of medical services at the Alexandria Detention Center during the period of El-Hanafi's confinement there. *See* Def Br. 12.

prohibition against cruel and unusual punishment. *Id.* The Court refused to imply a *Bivens* remedy against the privately-employed prison officials and medical staff, finding that California's tort laws were an adequate alternative because they provided for actions based upon "want of ordinary care or skill," "negligent failure to diagnose or treat," and "failure of one with a custodial duty to care for another to protect that other from 'unreasonable risk of physical harm,'" as well as similar deterrence and compensation to victims. *Id.* at 624. The *Minneci* court therefore held that where "a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law . . . the prisoner must seek a remedy under state tort law. We cannot imply a *Bivens* remedy in such a case." *Id.* at 626.

As in *Minneci*, El-Hanafi brings claims against the employees of a private company for the negligent provision of medical care in violation of the Eighth Amendment. Because *Minneci* foreclosed a *Bivens* remedy in precisely this type of situation, El-Hanafi's claims are barred. While the Supreme Court in *Minecci* left open the possibility that some constitutional claims might not have a state tort law analogue, and that the court might therefore have to decide whether to imply a *Bivens* action "when and if such a case arises," 132 S. Ct. at 626, this is not such a case. The Supreme Court in *Minneci* was clear that "state tort law remedies provide roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations," thereby foreclosing a *Bivens* remedy for a federal prisoner seeking damages from a private employee, "where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here) . . . ". *Id.* at 625-26. In this case, there is no question that analogous state law remedies do exist; El-Hanafi

7

brings state law claims founded on the same negligent acts in this very action.

El-Hanafi attempts to distinguish *Minneci* by arguing that the plaintiff there was an inmate at a privately-operated prison, while El-Hanafi was incarcerated at a state facility that contracted with the federal government. *See* Def Br. 12. The Court does not believe that this distinction should trigger a departure from *Minneci*. In fact, CCS and Conmed assert that their contracts were actually with a local entity – the City of Alexandria – which in turn contracted with the federal government, *see* Def. Reply Br. 6, a claim which El-Hanafi does not dispute. Thus, defendants are, if anything, potentially even further removed from the federal government than the defendant in *Minneci*, a fact that would counsel in favor of, not against, foreclosing a *Bivens* remedy. Def. Rep. Br. 6.

Accordingly, because El-Hanafi's Eighth Amendment claims against the individual employees of Conmed and CCS staff are clearly premised on the improper provision of medical care, precisely the type of conduct that "typically falls within the scope of traditional state tort law" and therefore cannot be the basis of a *Bivens* action, *see Minneci*, 132 S. Ct. at 625-626, El-Hanafi's *Bivens* claim against the individuals employed by Conmed and CCS employees is dismissed.

### 3. State Law Negligence Claims

El-Hanafi's claims for negligence (count two) and negligent infliction of emotional distress (count four) invoke state law. Compl. ¶¶ 195, 277. Conmed and CCS move to dismiss these claims as time-barred, applying the law of Virginia. Def. Br. 10-11. El-Hanafi argues that New York law applies, because under New York law his claims would be timely. Pl. Br. 13-14. The Court concludes that Virginia state law applies, and therefore the statute of limitations have run on El-Hanafi's state law claims against Conmed, CCS, and their employees.

With respect to El-Hanafi's claim for negligence in the delivery of medical care – *i.e.*, medical malpractice – the statute of limitations is two years under Virginia law, and two and a half years under New York law. *See* V. Code Ann. § 8.01-243(A); N.Y. C.P.L.R. 214-a. Under both Virginia

and New York law, a cause of action is said to accrue at the time the injury is sustained, and not when the resulting damage is discovered. *See* Va. Code Ann. § 8.01-230 N.Y. C.P.L.R. 214-a. Thus, the latest that El-Hanafi's claims accrued against Conmed, CCS, and their employees was May 11, 2010, the date that El-Hanafi alleges that he was transferred out of the Alexandria Detention Center. *Id.* ¶ 71. Even under New York's more generous limitations period, El-Hanafi was required to bring his claim by November 11, 2012 for it to be considered timely. Because El-Hanafi did not bring his claim until March 28, 2013 – over four months past the expiration period – his claim for medical malpractice is time-barred.

Regarding El-Hanafi's claim for negligent infliction of emotional distress, because the applicable statute of limitations period is three years in New York, but only two years in Virginia, El-Hanafi's claim would be timely if the Court applied New York law. Thus, the Court must consider whether New York law applies. A federal court exercising supplemental jurisdiction over state law claims must apply the choice of law rules of the forum state, here New York, to determine which state's substantive law applies. *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989). Under New York choice of law rules, the first step is to "determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (N.Y. 1993). "To find that there is an 'actual conflict,' the laws in question must provide different substantive rules in each jurisdiction that are 'relevant' to the issue at hand and have a 'significant possible effect on the outcome of the trial.'" *Elmaliach v. Bank of China Ltd.*, 971 N.Y.S.2d 504, 512 (N.Y. App. Div. 2013) (quoting *Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 331 (2d Cir. 2005) (citations omitted)).

Here, the elements of negligent infliction of emotional distress in New York and Virginia differ in at least one important respect. New York does not require a showing of physical injury (although New York does require that the claim "generally be premised upon a breach of a duty

9

owed directly to the plaintiff which either unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety."). *Daluise v. Sottile*, 837 N.Y.S.2d 175, 178 (N.Y. App. Div. 2007). In Virginia, on the other hand, claims for negligent infliction of emotional distress do require a showing of physical injury, *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833 (Va. 2000), and are generally disfavored, *Bowles v. May,* 166 S.E. 550, 557 (Va. 1932) (stating that emotional distress claims lie "within a class which is not favored," and "court[s] should allow no recovery in a doubtful case."). Thus, a choice of law question exists.

In tort actions, including those for negligent infliction of emotional distress, New York courts apply the substantive law of the jurisdiction that has the most significant interest in "the specific issue raised in the litigation." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 196 (N.Y. 1985) (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (N.Y. 1963)). In evaluating the interests of a jurisdiction in a particular tort, New York courts distinguish laws that regulate conduct (such as standards of care) and laws that allocate losses after the tort occurs (such as vicarious liability rules). *Padula v. Lilarn Prop. Corp.*, 84 N.Y.2d 519, 522 (N.Y. 1994); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). In the event that that the laws are intended to regulate conduct, "the law of the place of the tort will usually have a predominant, if not exclusive, concern," *Padula*, 84 N.Y.2d at 522 (internal quotation marks and citation omitted), because "the law of the jurisdiction where the tort occurred will generally [have] the greatest interest in regulating behavior within its borders," *Cooney v. Osgood Mach.*, 81 N.Y.2d 66, 72 (N.Y. 1993). The law of negligent infliction of emotional distress is clearly conduct-regulating, as it seeks to ensure that individuals – in this case those charged with a prisoner's medical care – refrain from intentional or reckless conduct that would cause a person to suffer severe emotional distress. Accordingly, the law of the state in which the tort allegedly occurred, here Virginia, controls. The fact that El-Hanafi was born in New York and is currently

10

incarcerated in New York does not make New York's interest in "the specific issue raised in the litigation" more significant than that of Virginia.  Thus, Virginia's law applies to this claim.

Under Virginia law, claims for negligent infliction of emotional distress are subject to a two-year statute of limitations, Va. Code Ann. § 8.01-243 (A) ("every action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues."), and a cause of action is said to accrue at the time the injury is sustained, not when the resulting damage is discovered.  *Id.* at § 8.01-230.  Because El-Hanafi did not file his claim until March 28, 2013, over ten months after the limitations period expired, his claim against Conmed, CCS, and their employees for negligent infliction of emotional distress is time-barred. [5]

## III.    CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint against Correct Care Solutions, Inc., Conmed Healthcare Management, Inc., and its employees – "John/Jane Doe, MD, Alexandria, Virginia Facility, Clinical Director" and "John/Jane Does, Alexandria Facility (Va.) Staff Health Care" – is granted.  The Clerk of Court is directed to terminate the motion pending at docket number 44 and to dismiss the aforementioned defendants from the case.

SO ORDERED.

Dated:  August 22, 2014
        New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

[5] Because the Court dismisses the state law claims against Conmed as being time-barred, it is unnecessary to reach the issue, raised by defendant, of whether Conmed was in fact a provider of medical services at the Alexandria Detention Center during the period of El-Hanafi's confinement there.  *See* Def Br. 12.